STATE *vs.* ALBERT PETERS *et al.*

AUGUST 10, 1954.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J.   This is an indictment charging that Albert Peters and Pasquale Petteruti on June 2, 1952 stole from the Liberty Motor Freight Lines, Inc., a New Jersey corpo-

ration, hereinafter called the freight line, certain goods and chattels of more than $500 in value. On a plea of nolo contendere Petteruti was sentenced to one year in the Providence county jail. Thereafter Peters was tried in the superior court before a jury which found him guilty. His motion for a new trial was heard and denied. The case is before us on his exceptions to the denial of that motion, to the refusal of the trial justice to direct a verdict in his favor, and to certain rulings and incidents during the trial. All exceptions not briefed or argued are deemed to be waived.

A detailed statement of the conflicting evidence is not necessary for our purposes. The testimony for the state in substance was that after dark on Sunday, April 27, 1952, a truck with lights out was seen entering and shortly thereafter leaving the terminal yard of the freight line. When the truck was stopped by the police officer who had been watching its movements, the defendant, who was driving, and Petteruti were arrested and brought to the police station where the officers found on the truck four cartons marked "Sylvania TV," each of which contained a television set. Further prompt investigation at the yard of the freight line showed that the seal on one of its vans parked at that place had been broken and the property just described, which had actually been sold for more than $600, was taken therefrom.

The defendant, who did not take the stand, relied upon the testimony of Petteruti to meet the state's case. Petteruti testified in substance that, after borrowing the truck from a third party, he met defendant and told him that he had purchased four television sets which he wanted him to deliver; that he then asked him as a favor to drive the truck as he had no license; that, upon reaching an agreement with reference thereto, they went for the truck and drove it to the yard of the freight line where they obtained possession of the television sets; and that defendant had no knowledge of any improper conduct in the matter.

The defendant's first exception is directed to the denial of his motion for a continuance on the ground of alleged prejudicial statements published by radio and in the public press on the morning of the trial. The newspaper was not made a part of the record, but from the colloquy between court and counsel it appears that the article at the basis of defendant's claim concerned his arrest, while on bail in the instant case, on a criminal charge in Massachusetts. In denying the motion the trial justice stated that he had not heard the radio broadcast and that he saw nothing in the newspaper article that was "likely to affect this defendant adversely in any way." However, he offered counsel the opportunity, rarely granted in the ordinary case, of examining each juror separately when called, but the offer was not accepted as the jury was thereafter drawn in the usual manner.

In the absence of proof in any form showing the tenor and probable effect of the reports upon which defendant relies for his claim of prejudice, it is impossible to determine from the record presently before us the true basis for such claim. In the circumstances the exception is overruled without further consideration.

The defendant's next exception that requires consideration relates to certain language of the assistant attorney general, hereinafter called the prosecutor, while impaneling the jury. In outlining the state's case to a complete but tentative jury and in the presence and hearing of other prospective jurors who were subject to call in the event of peremptory challenges by either party, he stated that Petteruti, the joint defendant, was not on trial because he had been "sentenced as of yesterday to a year in the Providence County Jail on this particular indictment * * *." Upon defendant's timely objection followed immediately by a motion to pass the case, the trial justice ordered all jurors withdrawn from the courtroom. In the discussion that ensued defendant claimed that the reference to the

disposition of the case against Petteruti was improper and prejudicial in that it would deprive the defendant of a fair and impartial trial. On the other hand, the prosecutor argued that his sole purpose in making such statement was to inform the jury that Petteruti would not be called as a witness for the state.

In denying defendant's motion the trial justice, apparently directing his remarks principally to the prosecutor, said: "The court will take pains to make this jury, or the jury that is finally selected, understand that this defendant is here himself charged and what happened to others is of no consequence, and that your reference to the disposition of the other party named is merely to explain the nonappearance of the other defendant at this time." A jury was then selected and sworn, but at no time thereafter were they instructed that the statement complained of was improper and should be completely disregarded by them in determining the guilt or innocence of the defendant. In so far as the jury were informed, the challenged statement was allowed to stand without any adverse comment by the trial justice.

The question of alleged prejudicial remarks by attorneys in the course of a trial has been the subject of numerous adjudications by the courts. Because of the different factual situations appearing in the decided cases it is inadvisable to refer to them at length in this opinion. See 23 C.J.S., Criminal Law, §1085; 39 Virginia L. Rev. 85. It is generally held that the determination of whether a questioned statement is harmless or prejudicial cannot be decided by any fixed rule of law. Each case must necessarily be determined on its own particular facts. In the first instance the decision of such question rests in the sound discretion of the trial justice. It is his duty to protect the parties, in both civil and criminal cases, against any utterance or conduct of attorneys that would or reasonably might tend to prejudice either of them with the jury, as it is highly important

that their verdict be above suspicion of any unlawful influence.

In *Lavigne* v. *Ballantyne*, 66 R. I. 123, 126, this court said: "When improper and extraneous matter of a harmful nature is intentionally injected or accidentally creeps into the evidence, it is the duty of the trial justice, upon complaint being made, to free the evidence from such matter, if possible, with proper warning to the jury. On the other hand, if this is not reasonably possible, then he ought, to pass the case." Such rule is clearly applicable in the circumstances of the instant case.

At this point it may be well to observe that in a criminal case the prosecuting attorney is in effect the representative of the people and not an advocate in the ordinary meaning of that term. As was said in *Goff* v. *Commonwealth*, 241 Ky. 428, 431: "He represents all the people of the commonwealth, including the defendant * * *." In *Berger* v. *United States*, 295 U. S. 78, 88, the court stated that in a criminal prosecution the attorney for the government was the representative of a sovereignty whose obligation was to govern impartially and that the interest of such officer was not that the sovereign "shall win a case, but that justice shall be done."

Generally speaking, the opening statement to a jury should cover the nature of the offense, the time of its completion, the facts claimed to constitute the crime without lengthy narration of expected testimony, and the witnesses who will be called to testify. In making such statement ordinary prudence requires that great care be exercised in guarding against any reference to improper extraneous matters, especially if they tend to prejudice the minds of the jurors. In other words, no facts should be stated unless material and competent.

The statement of the prosecutor in the instant case respecting the disposition of the case against the joint defendant Petteruti was unwarranted. In our judgment it was

potentially prejudicial in that it tended to convey the impression to the jury, at the very outset of the case, that because Petteruti had been sentenced for the same offense for which defendant was then on trial, the latter also was guilty as charged. Where prejudice starts and ends is a difficult question to determine. In the absence of positive instructions from the court concerning a harmful matter that was entirely foreign to the development of the state's case, we are not satisfied that the potential prejudice injected into the case at its very outset did not operate to deprive defendant of a fair and impartial trial.

The closest cases to the one at bar that have come to our attention are *Quig* v. *United Sates,* 33 F.2d 820, 821, and *Vecchio* v. *State,* 15 Ohio App. 153. In the *Quig* case one Hunsberger was indicted as principal and Quig as accessory in an indictment charging embezzlement of bank funds. When Quig alone was placed on trial the district attorney in his opening told the jury, among other things, that "Hunsberger pleaded guilty and was sentenced to ten years in the Atlanta Penitentiary, and Hunsberger is here today to do the right thing by the Government by telling the truth about this matter."

Holding that such remarks constituted reversible error, the court stated at page 822: "These statements made by the district attorney in his opening to the jury, before the offer of any testimony, or any opportunity for the defendant to object or the court to pass on such objection, very naturally took serious, and, perhaps, permanent lodgment in the minds of the jury. They went far beyond the rights possessed by government counsel in outlining its case to the jury; contained statements wholly incompetent, were seriously prejudicial to defendant's case, and should not have been admitted. The court would well have been justified in withdrawing a juror and continuing the case."

In *Vecchio* v. *State, supra,* the defendant and another, Lavett, were jointly charged with the crime of robbery. In

his opening the prosecutor told the jury: "The State will show that Lavett has already been tried on this charge and found guilty." Upon timely objection the trial justice denied defendant's request to pass the case, but in doing so he instructed the jury in unmistakable language to ignore completely such statement, and he further inquired if they could try the defendant solely on the evidence given in open court. To this query "each juror thereupon replied in the affirmative." In overruling defendant's exception to the denial of his motion to pass that case, the appellate court pointed out that when the objection in question was interposed there were two courses for the trial justice to follow: First, eliminate as far as possible, *by decisive instructions*, the effect of the statement so that it would not be prejudicial to the defendant; or, secondly, discharge the jury.

The opinion then states that the trial court, in the exercise of its discretion, chose the first course; that it "did all in its power to banish from the minds of the jury the prejudicial effect of the statement, and it is presumed that in the consideration of the case the jury followed the court's instructions and relieved the trial and consideration of the case of the serious consequences of the statement objected to by counsel for the plaintiff in error. It is the opinion of this court that as to this ground of error the court below, in its instructions, cured the case of the error injected by the assistant prosecuting attorney, and, therefore, we hold that under the circumstances aforesaid the language complained of was not prejudicial error."

It is unnecessary for us to say what our opinion would be if the situation in the instant case had been the same as that in the *Vecchio* case. However strong the evidence against a defendant may be, our duty in considering the question raised by the exception under discussion is to determine only whether or not the defendant here has had the fair and impartial trial to which he was clearly entitled.

Since no prompt and adequate action was taken by the trial justice in an attempt to disabuse the jury's minds of the prejudicial effect of the challenged statement, we cannot say with assurance from the record presently before us that the defendant had such a trial. This exception therefore is sustained. In view of such conclusion, we need not consider the other exceptions briefed and argued by him.

The defendant's exception to the denial of his motion to pass the case is sustained, and the case is remitted to the superior court for a new trial.

*William E. Powers,* Atty. Gen., *William J. Counihan, Jr.,* Ass't Atty. Gen., for State.

*Anthony Grilli,* for defendant.