Christi **EHRLICH**, Appellant,

v.

**Richard J. BACKES, Director,
Department of Transportation,
Appellee.**

**Civ. No. 910087.**

Supreme Court of North Dakota.

Nov. 12, 1991.

Michael Ray Hoffman, Bismarck, for appellant.

Gregory B. Gullickson, Asst. Atty. Gen., Bismarck, for appellee.

VANDE WALLE, Justice.

Christi Ehrlich appealed from a district court judgment affirming the administrative suspension of her driving privileges. We affirm.

Ehrlich was arrested, after failing several field sobriety tests, for driving under the influence of alcohol. Bismarck Police Officer Mark Lykken gave Ehrlich the *Miranda* advisory[1] and asked her to take a chemical test of her blood to determine its blood-alcohol content. Ehrlich said that she would not take the test unless an attorney was present. Lykken took her to the police station where he repeated his request that Ehrlich take a blood-alcohol test.

Ehrlich restated, at the police station, her demand that an attorney be present before she would submit to any tests. Lykken read to Ehrlich the implied consent law which provides that a refusal to submit to a chemical test by a driver arrested for driving under the influence will result in the

administrative suspension of driving privileges. NDCC § 39–20–04. Lykken made a telephone and city directory available to Ehrlich; she did not call an attorney. Ehrlich did not submit to a chemical test.

The Director acted to revoke Ehrlich's driver's license. Ehrlich requested and received an administrative hearing. At the hearing, Lykken and Ehrlich testified, giving conflicting accounts of events at the police station, including disparate testimony respecting Ehrlich's opportunity to contact an attorney. The hearing officer found that Lykken had reasonable grounds to believe Ehrlich was driving while under the influence of alcohol, that she was lawfully arrested, and that she refused to submit to a chemical test. The hearing officer specifically found that Lykken made a telephone available to Ehrlich who did not use it to call an attorney. On these findings, the hearing officer concluded that Ehrlich had violated the implied consent statute and ordered Ehrlich's license revoked for one year. Ehrlich appealed the license revocation to the district court and the district court affirmed the revocation.

On appeal, Ehrlich argues that her failure to submit to the chemical test was not a "refusal" under the statute because she was confused by the *Miranda* warning as to her constitutional right to an attorney and the demand for a chemical test under the implied consent law. In a related argument, she argues that the hearing officer improperly admitted hearsay testimony concerning this issue. Ehrlich also argues that the police did not adequately protect her right to counsel.

Ehrlich argues that her confusion vitiates her refusal to submit to the chemical test. While we have never reversed a license revocation based on the "confusion doctrine," we have examined that doctrine. *E.g., Hammeren v. North Dakota State Highway Comm'r,* 315 N.W.2d 679

---

1. In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that the prosecution may not use statements stemming from the custodial interrogation of a criminal defendant unless it demonstrates the use of procedural safeguards effected to secure the privilege against self-in-

crimination. "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706–07.

(N.D.1982). The "confusion doctrine" provides that when an arresting officer introduces the question of a drunken-driving suspect's right to counsel by giving a *Miranda* warning prior to requesting a chemical test, the suspect's subsequent refusal to take a test until an attorney is consulted may not constitute a "refusal to submit" to a chemical test. *Rust v. Department of Motor Vehicles*, 267 Cal.App.2d 545, 73 Cal. Rptr. 366, 366 (1968); *see also Agnew v. Hjelle*, 216 N.W.2d 291 (N.D.1974). "[T]his rule does not apply when the arresting officer explicitly informs the arrestee that the *Miranda* rights do not apply to the taking of a chemical test pursuant to the Implied Consent Law." *Agnew*, 216 N.W.2d at 297 [quoting, *Cahall v. Department of Motor Vehicles*, 16 Cal.App.3d 491, 94 Cal.Rptr. 182, 186 (1971)]. We noted a further limitation to the doctrine in *Hammeren*. In that case, we declined to adopt a "per se" rule which finds confusion whenever an officer fails to explain to a suspect that the *Miranda* rights do not remove the requirement under the implied consent law that he submit to a chemical test. Whether a suspect is confused is a question of fact and must, therefore, be established by sufficient evidence. We discussed at some length, in the context of evaluating the requirement of evidence of confusion, the need for the arrestee to testify that she was confused in order to raise the issue as one of fact.

When we examine the factual basis for an administrative decision, we limit our review to whether (1) the findings of fact are supported by a preponderance of the evidence, (2) the conclusions of law are sustained by the findings of fact, and (3) the decision is supported by the conclusions of law. *Schwind v. Director, N.D. Dept. of Transp.*, 462 N.W.2d 147 (N.D.1990). In reviewing the evidence supporting findings of fact, we do not make independent findings or substitute our judgment for that of the administrative decision maker. Rather, we determine only whether a reasoning mind reasonably could have determined that the factual conclusions were proved by the weight of the evidence. *Boehler v. Backes*, 461 N.W.2d 103 (N.D.1990).

There was evidence that Ehrlich was confused concerning the relationship between her constitutional right to consult an attorney and her obligation under the implied consent law to submit to a chemical test. Officer Lykken testified, on direct and cross-examination, that when he gave Ehrlich the *Miranda* warning and told her that she would have to take a chemical test, Ehrlich replied that she would not take a test unless an attorney was present. Ehrlich testified, about the *Miranda* advisory, that "it says that I have a right to an attorney before [the police] ask me any questions or do anything, and I wanted an attorney." Ehrlich did not testify, as we suggested in *Hammeren*, that she was confused about her obligation to submit to a test; there is some question whether this record of Ehrlich's "apparent" confusion fairly raised the issue before the hearing officer.

Whether or not the evidence Ehrlich contends illustrates her confusion is sufficient to raise the issue, the record reveals that the police adequately explained the relationship between the *Miranda* warning, Ehrlich's right to an attorney and her obligation to submit to the test or suffer the suspension of her license. Lykken testified that Ehrlich believed the police department should supply her a court-appointed attorney but that, while he was present, another officer told Ehrlich that the *Miranda* rights do not apply to the taking of a chemical test pursuant to the implied consent law, that if she wanted to call a lawyer she could and that her insistence that she would take the test only if an attorney was present was a "refusal to submit" to the test. Ehrlich objected to Lykken's testimony as hearsay testimony and argues that it should not have been considered in the administrative hearing. The Director argues that hearsay testimony can be offered in administrative hearings so long as it is probative and its admission is fair. The Director cites *Kobilansky v. Liffrig*, 358 N.W.2d 781 (N.D.1984), for that proposition. In *Kobilansky*, we concluded that the operational checklist for a Breathalyzer machine and the written results of a partic-

ular test were admissible in a license revocation hearing even though the documents may be hearsay. We need not address the Director's argument that all hearsay testimony can be admitted in administrative proceedings under this rule because we conclude that Lykken's statement was not hearsay evidence.

Rule 801(c), NDREv, defines hearsay as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." If an out-of-court statement is not offered to prove its truth, it is not hearsay. *State v. Welch*, 426 N.W.2d 550 (N.D.1988). A statement offered to prove it was made is not hearsay. *Id.* The purpose of the hearsay rule is to assure that the veracity of a witness to a material fact is subject to the safeguards of an oath and cross-examination. *In re Estate of Raketti*, 340 N.W.2d 894 (N.D.1983); *see also* NDREv 801, explanatory note.

Lykken's statement was not offered to prove its truth (that *Miranda* rights do not cover a suspect's submission to a test under the implied consent law), rather it was offered to show that Ehrlich, with this information, could not have refused to submit to the test because she was "confused" about her rights. Lykken was the declarant of the material fact, that Ehrlich had been advised, and Lykken was subject to the safeguards of an oath and cross-examination. Neither the terms nor the purpose of the hearsay rule are offended by the admission of this evidence. *See, State v. McClain*, 220 Kan. 80, 551 P.2d 806, 808 (1976) [testimony of one officer that another officer gave suspect *Miranda* warning was not hearsay]; *Lee v. State*, 700 P.2d 1017 (Okla.Crim.App.1985) [same]; *People v. Richardson*, 21 Ill.App.3d 859, 316 N.E.2d 37 (1974) [same].

Ehrlich would also have us extend, in effect, the confusion doctrine to require the police to explain the nature of a suspect's right to contact an attorney. Ehrlich testified that the *Miranda* warning "says that I have a right to an attorney before [the police] ask me any questions or do anything, and I wanted an attorney." Officer Lykken testified that Ehrlich felt the department should have supplied her with a court-appointed attorney. In *Kuntz v. State Highway Comm'r*, 405 N.W.2d 285 (N.D.1987), a majority of this Court held that an arrestee has a limited statutory right to a reasonable opportunity to contact an attorney before deciding to take a chemical test. *See* NDCC § 29–05–20. The hearing officer found that Lykken made a phone available for Ehrlich's use and that she did not call an attorney. Ehrlich was entitled only to a reasonable opportunity to consult with an attorney; the findings support a conclusion that Ehrlich received that opportunity.

The judgment of the district court is affirmed.

GIERKE, J., concurs.

ERICKSTAD, Chief Justice, specially concurring.

In my dissent in *Kuntz v. State Highway Commissioner*, 405 N.W.2d 285 at 290–91 (N.D.1987), I concluded, after reviewing the statutory provisions of, and purposes behind, the Implied Consent Act, that there was no right, statutory or otherwise, to consult with counsel before deciding whether or not to take a chemical test to determine a person's blood alcohol level. This is consistent with the object of the Implied Consent Act which is "an attempt to reduce the holocaust on our highways, part of which is due to the driver who has imbibed too freely of intoxicating liquor." *Colling v. Hjelle*, 125 N.W.2d 453, 459–60 (N.D.1963) (Erickstad, J., dissenting). I therefore concur in the result.

LEVINE, Justice, concurring in result.

It seems to me that confusion abounded here but that the hearing officer's finding that Ehrlich was given a reasonable opportunity to consult with an attorney, is based upon the weight of the evidence and, thus, is conclusive.

Ehrlich was entitled to contact an attorney before taking the chemical test. *Kuntz v. State Highway Comm'r*, 405

N.W.2d 285 (N.D.1987). *Cf. Friedman v. Comm'r of Public Safety*, 473 N.W.2d 828 (Minn.1991) (arrestee has limited right under Minnesota constitution to consult attorney before taking chemical test); *McDonald v. Comm'r of Public Safety*, 473 N.W.2d 848 (Minn.1991). The importance of the opportunity to consult with counsel is to mitigate the confusion that inheres in the situation where there is a *Miranda* assurance of a right to counsel followed by a denial of access to an attorney to advise whether to take a chemical test. *See Bickler v. North Dakota State Highway Comm'r*, 423 N.W.2d 146, 147 (N.D.1988) ("We believe our holding in *Kuntz* eliminated the contradiction between the postarrest *Miranda* assurance of a right to counsel, and the subsequent denial of access to an attorney's advice on whether to take the chemical test.").

Under *Kuntz* and *Bickler,* any confusion that would justify a reversal of a license revocation, is obviated by the opportunity of an arrestee to consult with counsel before taking a chemical test. That opportunity was present here. Accordingly, I would hold there is no cognizable claim of confusion.

I, therefore, concur in affirming the judgment which affirms the suspension of Ehrlich's driving privileges.

MESCHKE, J., concur.